UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD S.,[1]

      Plaintiff,
                                   Case No. 2:23-cv-12485
                                   District Judge Laurie J. Michelson
                                   Magistrate Judge Kimberly G. Altman

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## REPORT AND RECOMMENDATION ON
## CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 14)

### I.      Introduction

This is a social security case.  Plaintiff Richard S. brings this action under 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) under the Social Security Act (the Act).  Both parties have filed motions for summary judgment, (ECF Nos. 12, 14), which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B), (ECF No. 9).

---

[1] Consistent with guidance regarding privacy concerns in Social Security cases by the Judicial Conference Committee on Court Administration and Case Management, this district has adopted a policy to identify plaintiffs by only their first names and last initials.  *See also* Fed. R. Civ. P. 5.2(c)(2)(B).

For the reasons set forth below, the undersigned **RECOMMENDS** that Plaintiff's motion, (ECF No. 12), be **DENIED**; the Commissioner's motion, (ECF No. 14), be **GRANTED**; and the decision of the Administrative Law Judge be **AFFIRMED**.

## II.   Background

### A.   Procedural History

Plaintiff is 58 years old and filed an application for disability benefits under Title II of the Social Security Act on April 27, 2021, alleging a disability onset date of December 14, 2018.  (ECF No. 6-1, PageID.42, 172, 174).  He later amended his alleged disability onset date to July 15, 2021.  (*Id.*, PageID.42, 62, 243).  At the same time as this disability application, he also filed an application to proceed in district court without prepaying fees or costs, (ECF No. 2), which was approved. (ECF No. 3).

Under Social Security Administration agency regulations, Plaintiff's age at the time of the alleged disability onset (55 years old) put him in the category of a person of advanced age.[2]  (*Id.*, PageID.42, 62, 243); 20 C.F.R. § 404.1563.  He completed 2 years of college at Jackson College in 2016, where he received certificates in welding and CNC operations, and he previously worked as a

---

[2] For persons age 55 and older, it is considered that age significantly affects their ability to adjust to other work.  20 C.F.R. § 404.1563(e).

machine operator.  (ECF No. 6-1, PageID.196).  In his application, Plaintiff alleged disability due to chronic COPD (lung disease); degenerative bone disease of the lower back and hip; left lung removal; Schamberg's disease (chronic discoloration of skin); and nerve/tendon damage to his right foot.  (*Id*., PageID.195).

Plaintiff's application was denied initially on September 24, 2021, and upon reconsideration on March 7, 2022.  (*Id.*, PageID.42).  Plaintiff then submitted a written request for a hearing before an Administrative Law Judge (ALJ) and a hearing was held before ALJ Amy Rosenberg.  (*Id.*).  Due to the COVID-19 pandemic, Plaintiff appeared and testified by online video at the hearing, as did a vocational expert.  (*Id.*).  Plaintiff was represented by counsel and offered the following testimony:

- He is left-handed, is 6ft. 3in. tall, weighs 140 pounds, and lives with his wife.  (*Id.*, PageID.64).

- He has breathing issues that get worse whether it is hot or cold outside; he sometimes loses feeling in his right leg or foot, causing it to drag behind; and he has right foot numbness and pain from an old chainsaw injury.  (*Id.*, PageID.65, 71, 73, 76).

- He has nerve damage in his right leg that worsens after standing, causing his ankle to swell and hurt.  (*Id.*, PageID.72-73).

- He has difficulty lifting/carrying more than 5 pounds, standing longer than

3

45 minutes, and he is getting weaker at everything.  (*Id.*, PageID.67, 73, 75).

- He walks 1/4 mile in the mornings before resting on the road and then walking 1/4 mile back to his house.  (*Id.*, PageID.75-76).

On July 28, 2022, the ALJ issued a decision finding that Plaintiff was not disabled.  (*Id.*, PageID.53).  On August 4, 2023, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  (*Id.*, PageID.26-31).  Plaintiff timely filed for judicial review of the final decision. (ECF No. 1).

## B.    Medical Evidence

The medical records show that as early as April 2018, Plaintiff's right ankle x-ray showed prior surgical wire fixation in the right distal fibula with well-preserved ankle mortise.  (ECF No. 6-1, PageID.272).  At that time, his provider notes showed right foot bone spur and neuralgia of the right foot/ankle status from a prior chainsaw injury when Plaintiff was sixteen.  (*Id.*, PageID.425).

On June 26, 2018, Plaintiff was examined by Dr. Andrew Moore for possible thickening of his right plantar facia but a sonogram showed no thickening of the right foot plantar fascia.  (*Id.*, PageID.438).

On August 6, 2018, Plaintiff presented to Dr. Mohamed Hosni for examination of his pulmonary module.  (*Id.*, PageID.265).  A CT scan of his chest showed an interval increase in the size of a left upper lobe cavitary nodule since a

4

February 2018 examination and there were adjacent pulmonary nodules within the left upper lobe that were new or increased.  (*Id.*, PageID.265-266).  Dr. Hosni noted unremarkable central pulmonary arteries; an unremarkable lower neck and mediastinum; and an unremarkable chest wall and thoracic spine.  (*Id.*, PageID.266).  Plaintiff's central airway was widely patent and unremarkable, with no pleural effusions, no pericardial effusion or significant coronary artery calcification, and his aorta was normal in size and morphology.  (*Id.*, PageID.265).

On August 23, 2018, Plaintiff presented to Dr. Melanie Edwards for assessment as to appropriateness of lung surgery due to an enlarging left upper lobe cavitary nodule.  (*Id.*, PageID.464).  At the visit, Plaintiff was thin but well-appearing, with normal respiration, regular heart sounds, and no extremity edema or abnormal sensation, gait, or balance.  (*Id.*, PageID.464-465).  Dr. Edwards recommended proceeding with the lung surgery and for Plaintiff to complete tobacco cessation prior to surgery.  (*Id.*, PageID.465).

On September 19, 2018, Plaintiff underwent an uncomplicated robotic assisted thoracoscopic wedge resection to remove a portion of his lung.  (*Id.*, PageID.433, 453).  Dr. Matthew Wasco performed the procedure and noted Plaintiff's history as a current smoker with an enlarged left pulmonary nodule. (*Id.*, PageID.433).  After surgery, a surgical pathology report confirmed the removed left lung section had necrotizing granuloma and Dr. Wasco diagnosed

Plaintiff with necrotizing granulomatous inflammation with possible associated vasculitis. (*Id.*).

On October 25, 2018, five weeks after his lung surgery, Plaintiff presented for follow up with Dr. Edwards and chest imaging showed a significant clearing of a left upper chest opacity. (*Id.*, PageID.427). The imaging also showed some persisting linear opacities within the upper left chest/lung, as well as an oval lucency measuring 6 cm within the lateral aspect of Plaintiff's upper left chest. (*Id.*).

On December 13, 2018, Plaintiff presented for post-surgery follow up with Dr. Hosni and complained of ongoing left chest pain, loss of appetite, and fatigue. (*Id.*, PageID.453). He reported that he has continued smoking. (*Id.*). Dr. Hosni noted his incision was well-healed, his respiration was clear to auscultation bilaterally, his heart rate/rhythm was regular, and he was well-appearing and not distressed. (*Id.*). Dr. Hosni also re-prescribed Neurontin (nerve pain medication),[3] which Plaintiff said had helped him previously. (*Id.*).

On March 19, 2020, Plaintiff presented to Dr. William Leppert at IHA Primary Care and complained of right elbow pain, chronic back pain, cold intolerance, dyspnea (shortness of breath), and hematuria (blood in urine). (*Id.*,

---

[3] Neurontin is the brand name for the generic drug Gabapentin. *See* https://medlineplus.gov/druginfo/meds/a694007.html (last visited August 7, 2024).

PageID.313-316).  Upon examination, Plaintiff showed normal sensation, motor function and gait; mildly decreased breath sounds and right elbow tenderness; and no coughing, chest tightness, wheezing, or neurological issues.  (*Id.*).  Plaintiff reported that he continued to smoke, and Dr. Hosni assessed Plaintiff with unspecified dyspnea, right lateral epicondylitis (tennis elbow), and hematuria. (*Id.*).  Dr. Hosni also prescribed physical therapy exercises for Plaintiff's tennis elbow.  (*Id.*, PageID.313).

On June 9, 2020, Plaintiff presented to Nurse Vanessa Stebelton and reported left shoulder pain that started two months prior and caused pain, numbness, and tingling that spreads to his forearm.  (*Id.*, PageID.337).  Nurse Stebelton noted Plaintiff exhibited decreased left shoulder range of motion with muscle tension that was tender to palpitation.  (*Id.*, PageID.338-339).  But Plaintiff performed empty can and lift-off tests, both with negative results, and he had normal pulmonary effort, normal heart rate/rhythm, and no extremity swelling. (*Id.*).  Nurse Stebelton prescribed Mobic (NSAID), home exercises, and ice.  (*Id.*, PageID.336).

On July 9, 2020, Plaintiff presented for follow up with Nurse Stebelton and reported some left shoulder pain with tenderness and muscle spasms and right knee pain with tenderness and swelling.  (*Id.*, PageID.386-389).  Testing showed a normal range of motion in both joints; normal gait; and Plaintiff reported

improvement to his left shoulder from the home exercises and to his right knee from elevating it and applying ice. (*Id.*, PageID.386-389, 534-542).

On September 10, 2020, Plaintiff presented to Nurse Stebelton and complained of shortness of breath and chest pain in the same area as his lung surgery. (*Id.*, PageID.395). Plaintiff reported the shortness of breath worsened when performing activities like putting his boat in/out of the water, walking on a trail, or walking his dog. (*Id.*). He reported he continued to smoke and he exhibited normal heart sounds, normal pulmonary effort, and normal gait. (*Id.*, PageID.396, 398). A chest image showed surgical clips in the left lung upper lobe, minimal hyperinflation of the lung fields, and no active disease. (*Id.*, PageID.401).

On September 30, 2020, Dr. Hosni ordered CT chest scans of Plaintiff that showed no recurrent pulmonary masses; the remainder of his lungs were clear; no significant coronary artery calcification; no pericardial effusion; no significant abnormality of the thoracic aorta, abdomen or bones; and the pathology suggested prior granulomatous disease and possible vasculitis. (*Id.*, PageID.282-283, 621-622).

On November 13, 2020, Plaintiff presented to Nurse Stebelton and complained of left lower quadrant pain and shortness of breath. (*Id.*, PageID.408-409). Upon examination, left upper lung sounds were absent and Plaintiff had normal musculoskeletal range of motion, his neck was supple, and there was no

joint swelling, cranial nerve deficit, or abnormal gait. (*Id.*, PageID.345-347). Plaintiff reported he was breathing "a bit better," possibly due to not smoking for the past 3 weeks; his shortness of breath was improving and Nurse Stebelton reviewed how to use his albuterol inhaler. (*Id.*, PageID.408-409). Plaintiff's left side chest pain was improved due to Gabapentin and he was able to repair several vehicles in the past week with less pain than previously. (*Id.*, PageID.409). Gabapentin was also effective for managing his neuralgia pain of the left lung, feet and ankles; and his low back pain. (*Id.*, PageID.408-409).

On February 15, 2021, Plaintiff presented for a follow up visit with Nurse Stebelton and complained of back pain and trouble swallowing. (*Id.*, PageID.352-353, 516-518). Nurse Stebelton noted significant improvement in Plaintiff's neuralgia due to the prescribed Gabapentin. (*Id.*, PageID.516). A review of Plaintiff's systems showed he was negative for congestion, chest pain or palpitations, and gait problems or joint swelling. (*Id.*, PageID.353, 517-518).

On March 9, 2021, Plaintiff presented to Dr. Wendy Moller and reported he was not feeling well, was shaky, and had chest pain. (*Id.*, PageID.363-364, 509-514). Plaintiff described this chest pain as different from the chest pain he was experiencing after lung surgery. (*Id.*, PageID.510). Dr. Moller recommended Plaintiff continue taking Gabapentin because the neuropathy in his chest was responding to the medication. (*Id.*, PageID.509).

9

On April 6, 2021, Plaintiff presented to Dr. Moller for a follow up visit and complained of bilateral foot numbness and tingling, although he said the sensations come and go. (*Id.*, PageID.412). Plaintiff also reported that his chest pain had almost resolved and upon examination, he had a normal appearance, normal pulmonary effort, normal heart sounds, and no edema in either leg. (*Id.*, PageID.412, 414). Also, his toes were a normal color and had normal sensation and temperature. (*Id.*, PageID.414).

On May 3, 2021, Plaintiff presented to Dr. Nicholas Kielhorn and complained of chest pain. (*Id.*, PageID.303). Plaintiff underwent a stress ECG that showed a normal baseline ECG, normal sinus rhythm, non-specific ST abnormalities at baseline, no arrhythmias, no evidence of ischemia, no angina (chest pain) during testing, and that his exercise capacity was above average. (*Id.*, PageID.300). He also had normal blood pressure response. (*Id.*, PageID.623).

On May 11, 2021, Plaintiff presented to Nurse Stebelton for follow up regarding his left lung surgery and because he had been experiencing left shoulder pain for the past two weeks. (*Id.*, PageID.496-501). Nurse Stebelton opined that he was positive for left shoulder arthralgias (joint stiffness) and there was swelling, crepitus (creaky joints), and decreased range of motion in the same shoulder. (*Id.*, PageID.497, 499). His pulmonary and cardiac function was normal, he had a normal gait, his cervical back had a normal range of motion, his neck was supple,

10

and his appearance was normal.  (*Id.*, PageID.498-499).

On June 29, 2021, Plaintiff treated at Michigan Heart with Dr. Tauqir

Goraya for chest pain with diaphoresis (unusual sweating), nausea, and shortness

of breath, as well as leg pain and swelling.  (*Id.*, PageID.595-602).  Plaintiff

underwent another ECG scan, which showed sinus bradycardia at 56 bpm with

rightward axis, but otherwise normal.  (*Id.*, PageID.596).  Dr. Tauqir compared this

ECG scan to one conducted on March 9, 2021, and the comparison showed no

change.  (*Id.*).

On August 17, 2021, Plaintiff underwent a consultative physical

examination conducted by Dr. Tama Abel.  (*Id.*, PageID.569-575).  Plaintiff

reported pain in his lower back and hips, and stated he could only sit for two hours

at a time but had no limits on standing.  (*Id.*, PageID.570).  He also reported that he

could walk a few blocks without difficulty, was able to drive, and was independent

with his activities of daily living.  (*Id.*).  Dr. Abel noted Plaintiff's grip and pincher

strength was intact (5/5); his dexterity appeared unimpaired; he had no shortness of

breath during tests; and he had no difficulty getting on and off the examination

table, heel and toe walking, squatting and standing, or balancing on one foot.  (*Id.*,

PageID.571).  Results on a Pulmonary Function Report revealed reduced FVC and

FEV1 and no marked improvement in FEV1 after bronchodilator.  (*Id.*,

PageID.573-574).  Dr. Abel theorized that Plaintiff may have had an element of

COPD present, but that he did not describe any episodes of shortness of breath or difficulty breathing.  (*Id.*, PageID.572).  He also opined that Plaintiff may have had mechanical back pain with straight leg raising but without evidence of nerve root irritation, and he may have had an element of degenerative joint disease present in a variety of joints, but he did not require use of an assistive device to ambulate. (*Id.*).

On October 21, 2021, Plaintiff presented to Dr. Matthew Moore at Grass Lake Family Medicine and complained of daily back pain that waxed and waned over the last year.  (*Id.*, PageID.576-578).  Dr. Moore noted the pain was present in Plaintiff's lumbar spine and sacroiliac, and that he had left rib tenderness post-lung surgery, but no gait problems or joint swelling, no numbness or weakness, and a pain score of 2 out of 10.  (*Id.*, PageID.576-577).  Upon physical examination, Dr. Moore found Plaintiff had paraspinal lumbar muscle spasms, but he appeared well-developed with normal heart sounds, no respiratory distress, and normal breath sounds.  (*Id.*).

On November 13, 2021, Plaintiff presented to Dr. Moore for an annual exam.  (*Id.*, PageID.581-594).  Upon examination, Plaintiff was positive for back pain and myalgias (muscle aches and pains) but negative for abdominal pain, shortness of breath and wheezing, and gait problems.  (*Id.*, PageID.581-582).  He also demonstrated a well-developed appearance, normal pulmonary effort, and

normal heart sounds with no murmur.  (*Id.*).

On February 24, 2022, Plaintiff presented to Dr. James Carl and complained that he had been sick the week prior with left-sided anterior chest pain, fever, fast heart rate, cough and congestion.  (*Id.*, PageID.619-620).  Dr. Carl reviewed a chest image scan that showed post-surgical changes in the left upper lobe that were unchanged from Plaintiff's prior 2018 chest imaging scan.  (*Id.*, PageID.619).  Dr. Carl further opined that Plaintiff's lungs were hyperexpanded, which was consistent with COPD, but he had no acute airspace consolidation, pneumothorax or pleural effusion, and a normal cardiomediastinal silhouette.  (*Id.*).

### III.    Framework for Disability Determinations (the Five Steps)

Under the Act, DIB and SSI are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or

13

combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D. Mich. Oct. 31, 2008) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps. . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Plaintiff was not disabled under the Act. (ECF No. 6-1, PageID.42-53). At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 15,

14

2021, the amended alleged onset date. (*Id.*, PageID.44). At Step Two, the ALJ

found that Plaintiff had the severe impairments of degenerative disc disease of the

lumbar spine; chronic right foot neuropathy due to remote injury to the right ankle

with surgical wire fixation; sequelae from left lung wedge resection, including

dyspnea and chronic thoracic neuralgia; and chronic obstructive pulmonary disease

(COPD). (*Id.*). The ALJ also found that Plaintiff had the non-severe impairment

of gastroesophageal reflux disease (GERD). (*Id.*, PageID.44-45). The ALJ further

found that Plaintiff's Schamberg's disease did not rise to the level of a current

medically-determinable impairment and thus it was not considered when assessing

Plaintiff's residual functional capacity. (*Id.*, PageID.45). At Step Three, the ALJ

found that none of Plaintiff's impairments met or medically equaled a listed

impairment. (*Id.*, PageID.45-46).

The ALJ then assessed Plaintiff's residual functional capacity (RFC),

concluding that he was capable of performing light work as defined in 20 C.F.R. §

404.1567(b) except:

> he can frequently climb ramps and stairs, and occasionally climb
> ladders, ropes, scaffolds. He can frequently balance, stoop, kneel,
> crouch, and crawl. He can frequently reach. He can tolerate just
> occasional exposure to weather; to non-weather-related extreme heat,
> extreme cold, and humidity; and to other atmospheric conditions that
> could affect the respiratory system such as fumes, noxious odors, dusts,
> gases, and poor ventilation. He can tolerate just occasional exposure to
> vibration and to hazards such unprotected heights and moving
> machinery.

(*Id.*, PageID.46).

At Step Four, the ALJ made multiple findings.  First, based on Plaintiff's work history and the vocational expert's testimony, the ALJ found Plaintiff had the following past relevant work:

- Cut-Off Saw Operator, Dictionary of Occupational Titles (DOT) Code #607.682-010, semiskilled (SVP-4), medium exertion as generally performed and light exertion as Plaintiff actually performed the job; and

- CNC Machine Operator, DOT Code #609.362-010, skilled (SVP-5), medium exertion as generally performed and light exertion as Plaintiff actually performed the job.

(*Id.*, PageID.52-53).  The ALJ then found that Plaintiff was capable of performing his past relevant work as a CNC machine operator as he actually performed the job, and that this work did not require the performance of work-related activities precluded by Plaintiff's RFC.  *See* 20 C.F.R. § 404.1565; (*Id.*, PageID.52-53).  The ALJ did not explicitly consider Plaintiff's age category[4] under the Act—an individual of advanced age—because he found Plaintiff could perform his past relevant work.  (*Id.*, PageID.52).  Thus, this section of the Act is inapplicable, *see*

---

[4] Under the Act, individuals of advanced age, who also have a severe impairment that limits them to sedentary or light work, are presumed to be unable to make an adjustment to *other* work unless certain other conditions apply.  *See* § 416.968(d)(4) (emphasis added).

16

§ 416.968(d)(4), and in considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff could perform his past relevant work as actually performed.  (*Id.*, PageID.52-53).  Further, because the RFC is in the light exertion category and Plaintiff's past relevant work was also in the light category as actually performed, the ALJ accepted the vocational expert's testimony pursuant to Social Security Ruling (SSR) 00-4P.  (*Id.*).  As a result, the ALJ concluded that Plaintiff was not disabled under the Act.  (*Id.*).

## IV.    Standard of Review

A district court has jurisdiction to review the Commissioner's final administrative decision under 42 U.S.C. § 405(g).  Although a court can examine portions of the record that were not evaluated by the ALJ, *Walker v. Sec. of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one.  Judicial review is constrained to deciding whether the ALJ applied the proper legal standards in making his or her decision, and whether the record contains substantial evidence supporting that decision.  *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 224-25 (6th Cir. 2019); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (same), *aff'd sub nom. Biestek v. Berryhill*, 139

17

S. Ct. 1148 (2019).

An ALJ's factual findings must be supported by "substantial evidence."  42

U.S.C. § 405(g).  The Supreme Court has explained:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, this Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up).

In making "substantial evidence" the relevant standard, the law preserves the judiciary's ability to review decisions by administrative agencies, but it does not grant courts the right to review the evidence de novo.  *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("'The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009))).  An ALJ's factual findings are therefore subject to multi-tiered review, but those findings are conclusive unless the record lacks sufficient evidence to support them.  *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395

18

(6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley*, 581 F.3d at 406 (internal quotation marks and citation omitted).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the [Social Security Administration (SSA)] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (internal quotation marks and citations omitted).

V.    Analysis

A.    Parties' Arguments

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he erred in finding at Step Four that Plaintiff could return to his past relevant work when Plaintiff's job as actually performed was greater than what was described by the vocational expert.  In response, the Commissioner argues that Plaintiff failed to challenge the vocational expert's testimony at the administrative level and thus waived his opportunity to object to the vocational expert's testimony.  The Commissioner further argues that even assuming this issue was preserved, Plaintiff's challenge fails on the merits because the finding

19

that Plaintiff could perform his past relevant work was supported by substantial evidence.

## B.     Waiver Issue

### 1.     Standard

In the Sixth Circuit, the obligation to identify any conflicts or inaccuracies in a vocational expert's testimony falls squarely on the claimant.  *Zorn v. Comm'r of Soc. Sec.*, No. 12-cv-13822, 2015 WL 5545257, at \*4 (E.D. Mich. Sept. 18, 2015) ("The Sixth Circuit has held that there is nothing in the Social Security regulations that requires an administrative law judge to conduct an investigation into the accuracy of the testimony of a vocational expert, 'especially when the claimant fails to bring any conflict to the attention of the administrative law judge.'") (quoting *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008))); *see also Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168-69 (6th Cir. 2009) ("[P]laintiff has not pointed to any authority that the ALJ erred in his findings based on the VE's testimony, which went unchallenged by the plaintiff until after the ALJ issued his decision. . . . This obligation falls to the plaintiff's counsel . . . .").  "It is settled law in [this] district that a 'claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court.'" *Cooper v. Saul*, No. 20-cv-11855, 2021 WL 4785934, at \*8 (E.D. Mich. Apr. 26,

20

2021) (quoting *McCarley v. Berryhill*, No. 16-cv-14036, 2018 WL 1477668, at \*2
(E.D. Mich. Mar. 27, 2018)).

2.      Discussion

As discussed in more detail below, the vocational expert offered testimony
at the administrative hearing regarding Plaintiff's past relevant work as a CNC
machine operator.  (*Id.*, PageID.79-82, 83).  Plaintiff did not challenge the
testimony that he performed his job as a CNC machine operator at the light
exertional level.  (*Id.*, PageID.79-85).  During his testimony, the vocational expert
stated that the position was considered "medium as generally performed per the
DOT," but because Plaintiff "indicated light lifting overall,[] it appear[ed] to be
light as actually performed."  (*Id.*, PageID.79-80).  The vocational expert also
testified that because Plaintiff only lifted "little part[s] that weighed maybe three or
four pounds at a time," a hypothetical individual "limited to work at the light level
of exertion" could perform the CNC machine operator job as Plaintiff actually
performed it.  (*Id.*, PageID.80-83).

Here, Plaintiff was given the opportunity to question the vocational expert
during the hearing but declined to do so.  (*Id.*, PageID.84-85).  Plaintiff also posed
no questions during the vocational expert's testimony on Plaintiff's past work as a
CNC machine operator or the specific job duties at his workplace.  (*Id.*, PageID.84-
85).  Accordingly, Plaintiff waived any right to challenge the vocational expert's

21

description of Plaintiff's past relevant work or to now argue that it was not performed at the light level. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) ("[C]ounsel may not now complain because he failed to cross examine [the expert] when he had an opportunity to do so . . . ."); *see also Sulier v. Saul*, No. 19-cv-11078, 2020 WL 4516845, at *3 (E.D. Mich. July 17, 2020) ("Sulier failed to object to the VE's testimony or to the sufficiency of the fact-finding about her past relevant work at any time before the ALJ's decision, and she has thus waived any argument on these issues."); *Zorn*, 2015 WL 5545257, at *4 ("By declining to question the VE on cross-examination, any objections were waived and there are no grounds for relief based on [] either inaccuracies of the VE's testimony or a conflict between the VE's testimony and the DOT.").

The undersigned finds that Plaintiff has waived his ability to object to the classification of his past relevant work as being light work as actually performed. Nevertheless, for the sake of completeness, the undersigned has also considered the merits of Plaintiff's objection to the testimony, as did the Commissioner, and finds that the ALJ's decision was based on substantial evidence.

### C.     Past Relevant Work Determination

#### 1.     Standard

At Step Four of the sequential evaluation process, the ALJ determines whether a claimant can perform his past relevant work.  42 U.S.C. § 423(d)(2)(A);

20 C.F.R. § 404.1520(e).  In so doing, the ALJ examines a claimant's RFC and

compares it to the physical and mental demands of that claimant's past relevant

work.  20 C.F.R. § 404.1520(f); *see also Boucher v. Apfel*, 238 F.3d 419 (6th Cir.

2000).  If the evidence shows that a claimant retains the RFC to perform the

functional demands and job duties of a particular past relevant job as he actually

performed it, the claimant is not disabled.  20 C.F.R. § 404.1560(b)(2); *see also*

Social Security Ruling (SSR) 82-61, 1982 WL 31387, at *1 (Jan. 1, 1982).  A

claimant bears the burden to show that he does not have the RFC to perform his

past relevant work.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir.

2003).

### 2.    Vocational Expert's Testimony

Regarding Plaintiff's past relevant work, the ALJ considered the testimony

of the vocational expert, Timothy Whitford.  (ECF No. 6-1, PageID.52-53).  The

ALJ used his testimony to find that Plaintiff had the following past relevant work:

- Cut-Off Saw Operator, Dictionary of Occupational Titles Code #607.682-010, semiskilled (SVP-4), medium exertion as generally performed and light exertion as Plaintiff actually performed the job; and

- CNC Machine Operator, Dictionary of Occupational Titles Code #609.362-010, skilled (SVP-5), medium exertion as generally performed and light exertion as Plaintiff actually performed the job.

23

(*Id.*).

On July 8, 2022, Whitford testified as to Plaintiff's past work experiences and answered the ALJ's questions regarding hypothetical individuals of Plaintiff's age, education, past work experience, and hypothetical work scenarios. (*Id.*, PageID.79-82, 83). The ALJ first asked Whitford to classify Plaintiff's past work and Whitford classified both positions physical exertion requirements as involving medium work[5] as generally performed, but based on Plaintiff's testimony, involving light work[6] as actually performed. (*Id.*, PageID.79-80). For the first hypothetical, the ALJ asked Whitford to assume that:

> This individual is limited to work at the light level of exertion, as defined in the Social Security regulations, with the following additional non-exertional limitations. He could frequently climb ramps and stairs; and occasionally climb ladders, ropes, and scaffolds. He could frequently balance, stoop, kneel, crouch, and crawl. He can frequently reach. He can tolerate just occasional exposure to weather, to non-weather-related extreme heat, extreme cold, and humidity, and to other atmospheric conditions that could affect the respiratory systems such as fumes, noxious odors, dusts, gasses, and poor ventilation. He could tolerate just occasional exposure to vibration and to hazards such as unprotected heights and moving machinery. Would an individual with those limitations be able to perform the claimant's past work as actually or generally performed?

---

[5] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. *See* 20 C.F.R. § 404.1567(c).

[6] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. *See* 20 C.F.R. § 404.1567(b).

(*Id.*, PageID.80).  Whitford testified that based on the strength level needed for each position as generally performed, the hypothetical individual would not be able to perform either position.  (*Id.*, PageID.80-81).  He further elaborated that the hypothetical individual could not perform the Cut-Off Saw Operator position because of the environmental conditions of the position.  (*Id.*).  But he testified the hypothetical individual could perform the CNC Machine Operator position as actually performed based on the light lifting restriction.  (*Id.*, PageID.80-81).  Whitford also confirmed that his testimony as to this hypothetical was consistent with the Dictionary of Occupational Titles (DOT) and the Selected Characteristics of Occupations (SCO) publications.  (*Id.*, PageID.81-82).

The ALJ then modified the hypothetical and asked if adding a limitation indicating the hypothetical individual could lift up to ten pounds occasionally, five pounds frequently, and that he could walk no more than a quarter mile at a time before resting for at least six minutes, would have any effect on the hypothetical individual's ability to do the CNC operator job as Plaintiff had actually performed it.  (*Id.*, PageID.82).  Whitford initially said that the hypothetical individual could not perform under that scenario.  (*Id.*, PageID.82).  Plaintiff then testified that he initially performed the CNC operator job and lifted ten-pound parts but then changed machines that only ran smaller parts weighing three or four pounds.  (*Id.*).  Whitford then testified that the hypothetical individual could perform the position

under that scenario, based on Plaintiff's testimony.  (*Id.*, PageID.82-83).

The ALJ then asked if it would affect the individual's ability to do the past

work as performed if a further restriction was added that the individual needed to

sit for 10 to 15 minutes after 45 minutes of standing.  (*Id.*, PageID.83).  Whitford

testified that the individual would not be able to do the past work as performed

with this restriction and that there were no skills from Plaintiff's past work that

would transfer to any other light work with this sit/stand restriction.  (*Id.*,

PageID.84).  The ALJ ultimately did not incorporate this restriction into the RFC.

(*Id.*, PageID.46-52).  Plaintiff's attorney was given the opportunity to ask Whitford

further questions but declined.  (*Id.*).

In short, the ALJ supported his finding that Plaintiff could perform his past

relevant work by posing various hypotheticals to Whitford and also asking him if

the testimony he provided conflicted with the information found in the DOT, with

Whitford testifying that it did not conflict.  (*Id.*, PageID.65-66).

### 3.   Discussion

Under SSR 82-62, when finding that a claimant has the capacity to do past

relevant work as set forth in the regulations, the ALJ must make specific findings

as to: (1) the claimant's RFC, (2) the physical and mental demands of the past job

or occupation, and (3) whether the claimant's RFC would permit a return to his

past job or occupation.  *See* SSR 82-62, 1982 WL 31386, at *4 (Jan. 1, 1982); *see*

26

*also Felder v. Comm'r of Soc. Sec.*, No. 13-cv-12761, 2014 WL 3778210, at *11

(E.D. Mich. July 31, 2014) (explaining three-prong test that must be met in order

to find that a claimant can return to his past relevant work).  Plaintiff's only

argument is that the ALJ erred by making inadequate findings regarding Plaintiff's

past relevant work as he performed it.  (ECF No. 12, PageID.650).  The

Commissioner argues that the VE's finding was supported and that the ALJ did not

err in considering it..  (ECF No. 14, PageID.664-667).

Here, the ALJ provided a 25-paragraph explanation of the evidence in the

record that he considered in formulating Plaintiff's RFC, including Plaintiff's

testimony, his function reports, the medical evidence, and the opinion evidence.

(ECF No. 6-1, PageID.46-52).  For example, the ALJ found Plaintiff's allegations

inconsistent with the objective medical evidence of record but nevertheless added

some exertional and postural limitations, environmental limitations, and limitations

with exposure to vibration and hazards to avoid symptom aggravation and decrease

the chances of a workplace injury.  (*Id.*, PageID.50-51).  After reviewing the entire

record and considering Plaintiff's testimony, the ALJ found that Plaintiff retained

the RFC to perform light work with certain specific postural, manipulative, and

environmental limitations.  (*Id.*).

The ALJ also considered and accepted Whitford's testimony about the

physical demands of Plaintiff's past job as a CNC machine operator.  (*Id.*,

27

PageID.52-53, 81-83).  In his testimony, Whitford stated that Plaintiff's CNC machine operator position was a light exertion job as actually performed because Plaintiff testified that it involved lifting of no more than four pounds.  (*Id.*, PageID.67-68, 81-83) (Plaintiff testified that he worked only with "little parts" and had to lift or carry just "[f]our pounds, if that.").

Based on Whitford's and Plaintiff's testimony, the ALJ compared Plaintiff's RFC with the requirements of the CNC machine operator position and found that Plaintiff could perform his past relevant work as a CNC machine operator as he actually performed it.  (*Id.*, PageID.52-53); *see Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work, given his RFC.") (citing 20 C.F.R. § 404.1560(b)(2)).  The ALJ specifically found that because Plaintiff's RFC was "in the light exertion category and [he] ha[d] past relevant work in the light category as actually performed," he was "capable of performing past relevant work as a CNC Machine Operator as he actually performed that work."  (ECF No. 6-1, PageID.52-53).  The ALJ also found that the CNC machine operator job did "not require the performance of work-related activities precluded by [Plaintiff]'s [RFC]."  (*Id.*, PageID.52).

Because the ALJ made a detailed RFC determination and found that

Plaintiff's RFC met the requirements for his past relevant job as a CNC machine operator as actually performed, the ALJ's explanation was more than sufficient to satisfy the requirements of SSR 82-62. *See, e.g., Sweeney v. Comm'r of Soc. Sec.*, No. 13-cv- 12761, 2014 WL 4374348, at *10 (E.D. Mich. Sept. 4, 2014) ("The ALJ complied with [SSR 82-62] by making a detailed RFC determination and finding that plaintiff's ability to perform light work met the requirements for the position of assembler, as that position was actually . . . performed.") (citing *Morrow v. Comm'r of Soc. Sec.*, No. 13-cv-11913, 2014 WL 1908284, at *8 (E.D. Mich. May 13, 2014) ("With his [RFC] assessment in hand, the ALJ was in a position to conclude at step four that Morrow could perform her past relevant work as a file clerk.")); *Felder*, 2014 WL 3778210, at *11 (same).

Taking Plaintiff's impairments into account, the ALJ reasonably concluded that Plaintiff was capable of performing his past relevant work as a CNC machine operator as he actually performed it.  (ECF No. 6-1, PageID.52).  Ultimately, Plaintiff bears the burden of showing that he is limited beyond the RFC.  *See* 20 C.F.R. §§ 404.1512, 416.912; *Her v. Commissioner*, 203 F.3d 388, 391 (6th Cir. 1999).  The undersigned agrees with the Commissioner that Plaintiff has not met this burden, but instead asks the Court to impermissibly reweigh the evidence. *Mullins v. Sec'y of Health & Hum. Servs.*, 680 F.2d 472 (6th Cir. 1982).  Instead, the undersigned finds that the ALJ's opinion is supported by substantial evidence

based on the record before the Court, which is all that is required to affirm the

ALJ's decision.  *See Blakley*, 581 F.3d at 406 (holding that "if substantial evidence

supports the ALJ's decision, this Court defers to that finding even if there is

substantial evidence in the record that would have supported an opposite

conclusion." (internal quotations omitted)).

VI.    Conclusion

In the end, the ALJ found Plaintiff was not disabled and that his impairments

did not rise to the level of precluding Plaintiff from performing his past relevant

work consistent with the RFC crafted by the ALJ.  Substantial evidence supports

the Commissioner's decision that Plaintiff was not disabled within the meaning of

the Act.

Accordingly, for the reasons stated above, the undersigned

**RECOMMENDS** that Plaintiff's motion for summary judgment, (ECF No. 12), be

**DENIED**; the Commissioner's motion for summary judgment, (ECF No. 14), be

**GRANTED**; and the ALJ's decision be **AFFIRMED**.

Dated: August 9, 2024                          s/Kimberly G. Altman
Detroit, Michigan                              KIMBERLY G. ALTMAN
                                               United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 9, 2024.

31

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager